**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

PINELLAS MARINE SALVAGE, INC., and
JOHN MAVROGIANNIS

      Plaintiffs,

                                            Case No. 8:11-cv-00582-EAK-TBM

v.

KENNETH R. FEINBERG, and                   On Removal from the Circuit Court
FEINBERG ROZEN, LLP,                      of the Sixth Judicial Circuit In and
d/b/a GULF COAST CLAIMS FACILITY      For Pinellas County, Florida
                                          Case No. 11-1744 CI 013

      Defendants.

_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY
PROCEEDINGS PENDING A TRANSFER DECISION
BY THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

      Pinellas Marine Salvage, Inc. and John Mavrogiannis ("Plaintiffs"), by and through their

undersigned counsel, hereby respectfully submit this response in opposition to the motion by

Kenneth R. Feinberg, Feinberg Rozen, LLP and Gulf Coast Claims Facility ("Defendants") for a

stay of this litigation until such time as the Judicial Panel on Multidistrict Litigation (the "MDL

Panel") may issue an order transferring this action to the United States District Court for the

Eastern District of Louisiana, the Honorable Carl J. Barbier presiding (the "Transferee Court"),

for the reasons set out herein.

**PRELIMINARY STATEMENT**

      On March 18, 2011, Defendants removed this action from the Circuit Court of the Sixth

Judicial Circuit in and for Pinellas County, Florida on the erroneous grounds that this Court has

subject matter jurisdiction over Plaintiffs' claims pursuant either to the Oil Pollution Act of 1990

("OPA") or the Outer Continental Shelf Lands Act of 1953 ("OCSLA") and diversity jurisdiction

under 28 U.S.C. § 1332. *See* Notice of Removal, Document Number 1, filed on March 18, 2011,

p. 4, 5 (hereinafter "Notice of Removal"). In their Motion to Remand, Plaintiffs demonstrate that

Defendants have no basis to remove this action because this Court has neither subject matter

jurisdiction nor diversity jurisdiction. *See* Plaintiffs' Motion to Remand and Memorandum of

Law, Document Number 10, filed March 30, 2011 (hereinafter "Motion to Remand").

Having erroneously removed this action, Defendants now ask the Court to stay this

action, including the determination of whether federal jurisdiction exists in the first place, until

the MDL Panel determines whether to transfer this case to the federal district court in New

Orleans. The delay Defendants request will span many months, needlessly impeding Plaintiffs

from having their claims adjudicated in a timely manner by the Florida state court. Accordingly,

Plaintiffs respectfully request that the Court deny the requested stay and grant Plaintiffs'

Motion to Remand.

## PROCEDURAL BACKGROUND

On February 25, 2011, Plaintiffs filed this action against Defendants in the Circuit Court

of the Sixth Judicial Circuit in and for Pinellas County, Florida asserting claims for gross

negligence, negligence, negligence per se, fraud, fraudulent inducement, promissory estoppel,

and unjust enrichment. On March 1, 2011, Plaintiffs served their Complaint on Defendants.

On March 18, 2011, Defendants removed this action on the erroneous grounds that this

Court has federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under

28 U.S.C. § 1332. On March 18, 2011, Defendants also filed their Motion for Extension of Time to Respond to Complaint (to April 25, 2011). Plaintiffs filed their Motion to Remand on March 30, 2011. On April 15, 2011, Defendants filed a Notice of Tag-Along Case with the MDL Panel and their Motion to Stay in this Court.

## SUMMARY OF ARGUMENT

Defendants argue that the Court should stay this matter in order to promote judicial economy by preventing duplicative litigation and the possibility of inconsistent adjudications. Defendants further argue that "a stay pending the MDL Panel's decision will not significantly prejudice the Plaintiffs." *See* Defendants' Motion to Stay Proceedings Pending a Transfer Decision by the Judicial Panel on Multidistrict Litigation, Document Number 11, filed on April 15, 2011 (hereinafter "Motion to Stay"). Defendants' Motion to Stay is without merit for four reasons. First, this case does not belong in the MDL proceeding. Second, this Court has the authority to decide Plaintiffs' Motion to Remand and doing so will not result in duplicative litigation. Third, a determination by this Court of Plaintiffs' Motion to Remand presents no danger of creating inconsistent adjudications. Fourth, judicial economy would not be served by delaying the resolution of whether this Court has subject matter jurisdiction and/or diversity jurisdiction, but such a delay would result in undue hardship and prejudice to Plaintiffs.

## ARGUMENT AND AUTHORITIES

### A. This Case Does Not Belong in the MDL Proceeding.

According to the MDL Panel's Transfer Order (MDL No. 2179), dated August 10, 2010 and signed by MDL Chairman John G. Heyburn II: "The actions before the Panel indisputably

share factual issues concerning the cause (or causes) of the Deepwater Horizon explosion/fire

and the role, if any, that each defendant played in it. Centralization under Section 1407 will

eliminate duplicative discovery, prevent inconsistent pretrial rulings, including rulings on class

certification and other issues, and conserve the resources of the parties, their counsel, and the

judiciary. Centralization may also facilitate closer coordination with Kenneth Feinberg's

administration of the BP compensation fund. In all these respects, centralization will serve the

convenience of the parties and witnesses and promote the more just and efficient conduct of

these cases, taken as a whole. We also conclude that it makes sense to include the personal

injury/wrongful death actions in the MDL. Similarly, we do not find any strong reasons for

separate treatment of claims brought under the OPA. In our judgment, carving out the OPA

claims would only complicate matters, and denying centralization altogether is not a viable

option. To the extent that non-compliance with the OPA's presentment requirement becomes an

issue, failure to include OPA claims in centralized proceedings would raise the prospect of

multiple inconsistent rulings on that issue."

Defendants erroneously contend that "this case stems from the April 20, 2010 explosion

and fire that occurred on the "Deepwater Horizon" oil rig, and the subsequent oil spill in the Gulf

of Mexico." *See* Motion to Stay, p. 1. In this case, Plaintiffs' damages "resulted from" the

conduct of the defendants, *not* the oil spill.

Defendants, in part by making numerous false statements of material fact to Plaintiffs

(*See* Complaint, ¶ 136), breached their legal duty to Plaintiffs, failed to exercise reasonable care,

and acted with reckless, willful, and wanton disregard for the business and livelihood of

Plaintiffs in their negligent operation of Defendant GCCF's claim intake, claim review, claim

evaluation and claim settlement and payment services. Defendants knew or should have known

that their conduct, commonly referred to as a "Delay, Deny, Defend" strategy, would foreseeably

result in the financial ruin of Plaintiff Pinellas Marine Salvage, Inc. ("PMS") and cause

irreversible damage to the health and the economic interests of Plaintiff John Mavrogiannis. *See*

Motion to Remand, p. 2.

     *As a direct and proximate result of Defendants' conduct*, Plaintiffs have suffered legal

injury and damages, in an amount to be proven at trial, including, but not limited to, loss of

profit, loss of business reputation, loss of livelihood, loss of income, and other economic loss.

Accordingly, Plaintiffs filed this action against Defendants in Florida state court asserting claims

arising exclusively under Florida state law in order to obtain recovery for the damages they

incurred. *See* Motion to Remand, p. 2.

     This action does not "indisputably share factual issues concerning the cause (or causes) of

the Deepwater Horizon explosion/fire and the role, if any, that each defendant played in it." In

this case, centralization under Section 1407 will not conserve the resources of the parties, their

counsel, and the judiciary.

     A significant amount of discovery, clearly outside the contemplated scope of MDL No.

2179, shall be required to prove Plaintiffs' fact-bound and situation-specific allegations in regard

to false statements of material fact made to Plaintiffs (Complaint, ¶¶ 131, 136, 142), negligent

operation of Defendants' claim intake, claim review, claim evaluation and claim settlement and

payment services, and the "Delay, Deny, Defend" strategy employed by Defendants (Complaint,

Counts I and II, ¶ 151).

Furthermore, this claim is not, and could be, brought under OPA. OPA is a strict liability statute. In order to recover damages, a claimant merely needs to show that his or her damages "resulted from" the oil spill. OPA states, "The responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and damages that result from such incident." *See* 33 U.S.C. § 2702(a). Damages "equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources" are recoverable by any claimant against the responsible party under OPA. 33 U.S.C. § 2702(b)(2)(E).

In the present case, Plaintiffs' damages did not "result from" the oil spill and Defendants are not "responsible parties" under OPA. *See* 33 U.S.C. § 2701(32)(C). Defendants, with 13 offices located in the State of Florida, are *independent contractors* (Complaint, ¶ 31) that administer, settle and authorize the payment of certain claims asserted against BP as a result of the explosion at the Deepwater Horizon rig and consequent spillage of oil into the Gulf of Mexico. Accordingly, the damages incurred by Plaintiffs as a result of Defendants' tortious acts *are not recoverable by Plaintiffs under OPA*. *See* Motion to Remand, p. 14.

**B. The Court Should Resolve Plaintiffs' Motion to Remand: Doing So Will Not Result in Duplicative Litigation.**

The rules promulgated by the MDL Panel contemplate that litigation in this Court will proceed on its normal schedule until a transfer is ordered, if at all. Specifically, Rule 2.1(d) provides:

Pendency of Motion or Conditional Order. The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court.

The MDL Panel itself acknowledges that there is often a "lag time of at least three or four months" until it can issue a transfer order. *In re Asbestos Prods. Liab. Litig*., 170 F. Supp. 2d 1348, n.1 (J.P.M.L. 2001). As of March 15, 2011, 390 actions are pending in MDL No. 2179. http://www.jpml.uscourts.gov/Pending_MDL_Dockets-By_District-March-2011.pdf

The result of a stay would be that Plaintiffs' claims would spend many months winding through an overcrowded process in two different federal courts that lacked jurisdiction from the outset. Not only would Plaintiffs be required to re-submit their Motion to Remand to the Transferee Court, but, pursuant to MDL No. 2179 Pre-Trial Order No. 15, dated November 5, 2010, "all pending and future motions, *including Motions to Remand*, are continued without date unless a motion is specifically excepted from the continuance by the Court. The Court will then organize and prioritize the continued motions and in due course, set the motions for hearing."

In an attempt to avoid such undesirable outcomes, the MDL Panel frequently abstains from ordering transfers when important motions have been submitted and await decision by the originating court. *In re L.E. Lay & Co. Antitrust Litig*., 391 F. Supp. 1054, 1056 (J.P.M.L. 1975) (finding that "on principles of comity, we are reluctant to transfer any action that has an important motion under submission by the court.").  Thus, the MDL Panel has historically elected to stay its own transfer decision pending a decision by the originating court on significant matters such as motions to remand. *In re Air Crash Disaster at J.F.K. Int'l Airport*, MDL-227 (J.P.M.L. filed July 20, 1977) (unpublished order deferring Panel decision on question of transfer

-7-

of tag-along action until decision by transferor court on *sub judice* motion to remand that action

to state court); see also, *In re Deering Mieliken Patent*, 328 F. Supp. 504, 505-06 (J.P.M.L.

1970) (transfer under § 1407 denied to allow decision by transferor judges on motions for

transfer that might render question of transfer under § 1407 moot if decided favorably).

Even where the MDL Panel does not abstain on its own, district courts frequently decline

to stay the litigation until they have resolved threshold jurisdictional issues such as motions to

remand. S*ee Hamzey v. Baylor Corp.*, 2010 WL 2011529 (S.D. Cal. May 19, 2010) (denying

motion to stay pending transfer by the MDL panel and granting motion to remand and noting that

"federal courts are under a continuing duty to confirm their jurisdictional power and are even

obliged to inquire *sua sponte* whenever a doubt arises as to [its] existence…" (*citing Mt.*

*Healthy City Sch. Dist. Bd. of Educ. V. Doyle*, 429 U.S. 274, 278 (1977))); *Clark v. BHP Copper,*

*Inc.*, 2010 WL 1266392 (N.D. Cal. Mar. 30, 2010) (denying motion to stay pending possible

transfer to MDL and granting motion to remand); *Curry v. Applebee's Int'l, Inc.*, 2009 WL

4975274 (S.D. Ohio Nov. 17, 2009) (granting motion for remand and noting that "the challenge

raised in Plaintiff's Motion for Remand to be of primary concern and advised the parties that the

court would rule on that motion prior to determining whether the case should be stayed" pending

transfer to the MDL). Courts deciding such issues have taken the view that, if the federal court

lacks subject matter jurisdiction, the issue of granting a stay is moot. *See Madden v. A.H. Voss.*

*Co.*, 2009 WL 3415377 (N.D. Cal. Oct. 21, 2009) (granting motion to remand and denying as

moot motion to stay pending transfer to the MDL). *See The St. Joe Company v. Transocean*

*Offshore Deepwater Drilling, Inc.*, C.A. No. 1:10-cv-968-LPS, 2011 U.S. Dist. LEXIS 26391

(March 15, 2011, Decided) (granting motion to remand and denying motion to stay pending

transfer to MDL No. 2179).

The authority to remand a removed case survives a J.P.M.L. conditional transfer order.

*The St. Joe Company v. Transocean Offshore Deepwater Drilling, Inc*., C.A. No. 1:10-cv-968-

LPS, 2011 U.S. Dist. LEXIS 26391 (March 15, 2011, Decided); *See Rio de Janeiro of Federated*

*Republic of Brazil* v. *Philip Morris Inc.,* 239 F.3d 714, 715 (5th Cir. 2001); *see also* 28 U.S.C. §

1407; R.P.J.P.M.L. 2.1 (d).

Given this Court's inherent power to decide Plaintiffs' pending Motion to Remand, there

is no risk of duplicative litigation. A decision by this Court to remand the matter will resolve this

issue. *See* 28 U.S.C. § 1447(d) (An order remanding a case to the State court from which it was

removed is not reviewable on appeal or otherwise).

**C. Determination of Plaintiffs' Motion To Remand Presents No Danger of Inconsistent Adjudications.**

Defendants argue that, if this Court declines to grant a stay and decides the jurisdictional

issue now pending before it, there may be inconsistent adjudications between this Court and

the Transferee Court. This argument ignores this Court's autonomy in setting its own docket and

addressing the scope of its own jurisdiction, *See Ruhrgas AG v. Marathon Oil Co*., 526 U.S. 574

(1999) (discussing threshold nature of jurisdictional questions) and turns the issue on its head by

assuming removal was valid in the first place.

**1. Defendants' removal of this action was improper.**

For reasons stated in the Motion to Remand, the removal of this action was improper.

Defendants argue that removal is proper because:

(1) "Federal District Courts 'have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States;'" and "this case arises under OPA because.....all of Plaintiffs' claims assert violations of OPA and will require an interpretation of OPA notwithstanding that Plaintiffs' claims are purportedly asserted under state law;" (2) "33 U.S.C. § 2717(b) gives federal courts 'original jurisdiction over all controversies arising under this Act [OPA], without regard to the citizenship of the parties or the amount in controversy;'" (3) Plaintiffs' claims allegedly raise federal questions under OSCLA sufficient to support removal under 28 U.S.C. § 1441; and (4) Complete diversity exists between the Plaintiffs and the Defendants and the amount in controversy exceeds $75,000.00 thereby giving Defendants the right to remove the case under 28 U.S.C. § 1441.

All four arguments are without merit. Neither OPA nor OCSLA provides a basis for removal. Therefore, the Court lacks subject matter jurisdiction. First, Defendants were not permitted to remove this action on the ground that this case "arises under" OPA or that Plaintiffs' state law claims are preempted by federal law. Second, OPA does not provide original federal jurisdiction over claims for oil spill damages because it does not create a federal question where a plaintiff does not assert a claim under OPA's substantive provisions, nor does it preempt state common law claims. In the present case, Plaintiffs do not assert any claims under OPA and rely solely on state law. Plaintiffs' allegations that Defendants violated OPA are merely evidence of, at the very least, Defendants' negligence and do not create a removable federal question; Third, removal under OCSLA's jurisdictional provision in 43 U.S.C. § 1349 was improper because: (i) OCSLA must be read in conjunction with the later-enacted provisions of OPA that specifically preserve victims' rights to seek remedies in state court under state law; and (ii) the

original jurisdiction provision in 43 U.S.C. § 1349(b)(1)(A) does not transform state law claims

into federal questions removable under 28 U.S.C. § 1441; Fourth, Defendants fail to meet their

burden of establishing the citizenship of the parties for the purpose of proving that complete

diversity existed at the time of removal to the federal court. *See* Motion to Remand, p. 4, 5.

There is no reason to believe the Transferee Court would reach an opposite conclusion with

regard to jurisdiction in this action.

**D. Judicial Economy Would Not Be Served By Delaying Resolution of This Court's Subject Matter Jurisdiction and Diversity Jurisdiction, and Plaintiffs Would Be Prejudiced By A Stay.**

Defendants also argue that a stay will conserve judicial resources. In support of this

baseless argument Defendants state, "There is no point in this Court immersing itself in the OPA

statutory scheme if another judge will ultimately be called on to decide the issues presented in

this case." However, this Court would not be called upon to do so, as the case would be

remanded to state court and not transferred to the multidistrict litigation. There is no federal

jurisdiction to hear this action, a fact that would be as true in the Eastern District of Louisiana as

it is in this Court. Defendants further argue that they may be prejudiced by the duplication in

efforts required if they are forced to participate in pretrial proceedings in this forum and then the

action is transferred to the MDL court. However, pretrial proceedings is not the issue here.

Rather, the issue is subject matter jurisdiction and diversity jurisdiction, both of which must be

resolved before moving forward with any pretrial proceeding.

Judicial economy would be best served by remanding this case to state court, thereby

allowing Plaintiffs to immediately pursue their claims against Defendants. Defendants, in part by

making numerous false statements of material fact to Plaintiffs (*See* Complaint, ¶ 136), breached their legal duty to Plaintiffs, failed to exercise reasonable care, and acted with reckless, willful, and wanton disregard for the business and livelihood of Plaintiffs in their negligent operation of Defendant GCCF's claim intake, claim review, claim evaluation and claim settlement and payment services. Defendants knew or should have known that their conduct, commonly referred to as a "Delay, Deny, Defend" strategy, would foreseeably result in the financial ruin of Plaintiff PMS and cause irreversible damage to the health and the economic interests of Plaintiff John Mavrogiannis. Plaintiffs will be made whole only if Defendants are held accountable for these actions. Furthermore, if Defendants are held accountable in state court for their tortious acts, future claimants may be properly compensated by Defendants, thereby precluding the need for these claimants to litigate.

Most importantly, a stay of litigation would greatly prejudice Plaintiffs by depriving them of the earliest and most efficient resolution of the right to pursue their claims in Florida state court. Here, the question is whether Plaintiffs will have to pay thrice: (a) once for the oil spill, the environmental and economic damages of which have devastated their way of life; (b) again by being left in financial ruin as a result of Defendants' tortious acts; and (c) a third time for daring to demand justice, which will consume their time, energy and hopes for years to come if they are held hostage by protracted litigation.

To date, in the various *Deepwater Horizon*-related lawsuits from around the country, no other case like Pinellas Marine Salvage, Inc., et al v. Kenneth R. Feinberg, et al has been filed. Specifically, in no other case has a plaintiff, bringing only state law causes of action, sued Defendants for the "Delay, Deny, Defend" strategy employed in Defendants' negligent and

fraudulent operation of their claim intake, claim review, claim evaluation and claim settlement and payment services.

## CONCLUSION

For all the foregoing reasons, Plaintiffs request that this Court (1) deny Defendants' Motion to Stay; (2) grant Plaintiffs' pending Motion to Remand; and (3) grant Plaintiffs all other appropriate relief.

## LOCAL RULE CERTIFICATION

The undersigned certifies, pursuant to Middle District Rule 3.01(g), that he has conferred

with counsel for Defendants regarding the relief requested herein. Counsel for Defendants has

indicated that he opposes the relief requested herein.


DATED: April 18, 2011                                    Respectfully submitted,

                                                         **s/ Brian J. Donovan**_____
                                                         Brian J. Donovan
                                                         Attorney for Plaintiffs
                                                         Florida Bar No. 143900
                                                         3102 Seaway Court, Suite 304
                                                         Tampa, FL 33629
                                                         Tel: (352)328-7469
                                                         BrianJDonovan@verizon.net

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court

by using the CM/ECF system. I further certify a copy of the foregoing was sent via U.S. Mail to:

**Eric S. Adams, Esquire**, Shutts & Bowen LLP, 100 S. Ashley Dr., Suite 1500, Tampa, FL

33602, **David B. Pitofsky, Esquire**, Goodwin Procter, LLP, 620 Eighth Avenue, New York, NY

10018, and **William F. Sheehan, Esquire**, Goodwin Procter, LLP, 901 New York Avenue, NW,

Washington, DC 20001, this <u>18th</u> day of April, 2011.

**s/ Brian J. Donovan**
Brian J. Donovan
Attorney for Plaintiffs
Florida Bar No. 143900
3102 Seaway Court, Suite 304
Tampa, FL 33629
Telephone: (352)328-7469
BrianJDonovan@verizon.net
