**BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| **IN RE:** | **OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010** | **MDL NO. 2179** |

# MEMORANDUM OF LEGAL AUTHORITY IN SUPPORT OF MOTION TO VACATE CONDITIONAL TRANSFER ORDER NUMBER 134 AS TO ALL PLAINTIFFS

FERDERICK T. KUYKENDALL, III
KUYKENDALL & ASSOCIATES, LLC
PO BOX 2179
FAIRHOPE, AL 36533
ftk@kuykendallassociatesllc.com
(205) 434-2866

GRANT D. AMEY
LAW OFFICE OF GRANT D. AMEY, LLC
PO BOX 67
FAIRHOPE, AL 36533
grantamey@grantamey.com
(251) 716-0317

ATTORNEYS FOR ENVIRONMENTAL LITIGATION GROUP, PC

# TABLE OF CONTENTS

Table of Contents……………………………………………………………………………….2

Table of Authorities…………………………………………………………………………….3

Memorandum in Support of Motion to Vacate………………………………………………..4-12

I. INTRODUCTION………………………………………………………………5

II. FACTS…………………………………………………………………………..5

III. LAW……………………………………………………………………………..8

IV. ARGUMENT……………………………………………………………………10

V. CONCLUSION…………………………………………………………………11

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*In re* Donald J. Trump Casino Sec. Litig., 7 F.3d 357, 367-68 (3rd Cir. 1993)……………….…..9

*In re* Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998)……………9

*In re* IBM Peripheral EDP Devices Antitrust Litig., 407 F. Supp. 254, 256 (J.P.M.L. 1976)……9

*In re* Roberts, 178 F.3d 181 (3d Cir. 1999)…………………………………………………...9, 10

*In re* Sprint Corp. PCS Network Contract Litigation, 303 F.Supp. 2d 1376 (2004)…………….10

*In re* Plumbing Fixture Cases, 298 F. Supp. 484 (J.P.M.L. 1968)……………………..……10, 11

**MISCELLANEOUS**

***Federal Statutes***

28 U.S.C. § 292……………………………………………………………………………..9, 10

28 U.S.C. § 1407…………………………………………………………………….…….8, 9

33 U.S.C. § 2701……………………………………………………………………...……7

***Federal Rules***

JUDICIAL PANEL ON MULTIDISTRICT LIT. R. 7.6(c)……………………….……………………….9

***Other***

*Manual for Complex Litigation* 4th § 20.13……………………………………….…………8

*Manual for Complex Litigation* 4th § 20.131…………………………...…………….8, 9, 10, 11

*Manual for Complex Litigation* 4th § 20.132…………………………………………...………9

*Manual for Complex Litigation* 4th § 20.133………………………………………….9, 10, 11

## MEMORANDUM IN SUPPORT OF MOTION TO VACATE CONDITIONAL TRANSFER ORDER 134

**MAY IT PLEASE THE COURT:**

**NOW INTO COURT**, come the following Movants from CTO-134

(a) Environmental Litigation Group, PC.

more specifically outlined in the attached Schedule of Actions, who respectfully submit that it is entitled, as a matter of law, for vacation of the JPML's Conditional Transfer Order Number 134, as to Moving Plaintiff, for the reasons more specifically set forth below.

## I. Introduction

This Motion, and supporting Memorandum, is submitted in response to the automatic issuance of Conditional Transfer Order ("CTO") applicable to the claim asserted by the party below. For the reasons more fully set forth herein, the CTO at issue should be vacated.

## II. Facts

1. Nearly six years the catching on fire, and subsequent sinking, of the Deepwater Horizon drilling rig, hundreds of actions have been filed against similar defendants in the MDL 2179, for damages resulting for the oil spill resulting from the April, 2010 disaster.

2. As a direct result of the sinking of the Deepwater Horizon, the Macondo well began bleeding huge volumes of crude oil into the Gulf and marine environment, and later onto the beaches, waterways, coastal marshes, lands, and wetlands of the Gulf Coast states, including Alabama. As a further direct result of this human, environmental, ecological, and financial disaster, the public and private institutions, as well as citizens of the United States, responded to this disaster by severing its business, personal, commercial, and recreational activities with the Gulf Coast out of, among other things, fear of hydrocarbon exposure.

3. Alabama communities and economies experienced cancelled vacations, conventions, sporting events, festivals, fairs, business meetings, political meetings, daytrips, and many other commercial adverse reactions.

4. For approximately ninety (90) days, until early August 2010, crude oil gushed into the Gulf Waters until the Macondo was officially capped. In the hours after the sinking of the Deepwater Horizon, BP utilized various toxic dispersants intended to bind to and sink the crude oil to the bottom of the sea. Latest crude oil spill statistics published estimate 200,000,000 gallons

of oil contaminated the environment and 1,800,000 gallons of Corexit dispersant was sprayed on the oil.

5. The parties have reached, and the Court is enforcing, an Amended Settlement Agreement in MDL 2179 by virtue of the Court Supervised Settlement Program. However, the Plaintiff who brought the Actions listed in the herein has had its claim for damages denied by the CSSP for allegedly failing to meet certain documentation requirements. This Action has been made subject to a Conditional Transfer Order (sometimes herein after "CTO") seeking to put them in MDL 2179.

6. On January 13, 2017 the Judicial Panel on Multidistrict Litigation (hereinafter sometimes "JPML") entered an order conditionally transferring *Environmental Litigation Group PC v. BP*, ALN/2:17-cv-00050 to the MDL 2179 (CTO 134, Doc. 1).

7. The Plaintiff made subject to CTO 134 timely filed its Notice of Opposition to that CTO and now file this, their Motion to Vacate CTO.

8. On August 10, 2010, the Judicial Panel for Multidistrict Litigation transferred all pending actions related to the oil spill to Judge Barbier in the Eastern District of Louisiana for coordinated or consolidated pre-trial proceedings with actions pending in that District.

9. In October 2010, Judge Barbier entered Pre-trial Order No. 11, separating the proceeding into pleading bundles, including, inter alia, Pleading Bundle B1—Non-governmental Economic Loss and Property Damages—which included OPA claims. The Court directed the Plaintiffs' Steering Committee to set forth all claims in the B1 Bundle in a Master Complaint.

10. In Pretrial Order No. 25, the Court clarified that the allegations, claims, theories of recovery and/or prayers for relief contained within any pre-existing petition or complaint are deemed to be amended, restated, and superseded by the allegations, claims, theories of recovery,

and/or prayers for relief in the respective Master Complaints in which a defendant was named that apply to the pre-existing petition or complaint.

11. All individual complaints that fell within Bundle B1 were stayed by Pretrial Order No. 25. Further, the order provided that the filing of the Master Complaints did not waive or supersede requests for the certification of one or more class actions (and/or sub-classes) under Rule 23, except to the extent that such proposed class definitions and/or allegations are covered in one or more of the Master Complaints, which were deemed to be the operative complaints for such class actions.

12. The Amended B1 Bundle Master Complaint, filed in February 2011, sought certification of the following class:

> All individuals and entities residing or owning property in the United States who claim economic losses, or damages to their occupations, businesses, and/or property as a result of the April 20, 2010 explosions and fire aboard, and sinking of, the Deepwater Horizon, and the resulting Spill.

13. That Master Complaint brought claims under the Oil Pollution Act against BP and other defendants seeking, among other damages, recovery of damages to real or personal property, including "[D]amages for injury to, or economic losses resulting from destruction of, real or personal property, which shall be recoverable by a claimant who owns or leases that property, including the diminution in the value of their property." The Master Complaint further pleaded a subclass of individuals and entities residing or owning property in the states of Alabama, Florida, Louisiana, Mississippi, and Texas of:

> All individuals and entities entitled to make a claim under the Oil Pollution Act, 33 U.S.C. § 2701, et seq. (the "OPA"), as a result of the April 20, 2010 explosions and fire aboard, and sinking of, the Deepwater Horizon and resulting Spill, and who have timely complied with all administrative requirements therein.

14. Plaintiff in this Action is an absent class members of the classes pleaded in the Amended B1 Bundle Master Complaint.

15. The Court has not ruled on certification of the classes pleaded in the Amended B1 Bundle Master Complaint and the OPA claims pleaded in that Complaint were dismissed on March 29, 2016 by operation of Pretrial Order 60 (Doc. 16050).

16. Lastly, should the Movant be centralized into MDL 2179, it would be subject to Pretrial Order 15, which has been standing since November 5, 2010 and states that "all pending and future motions, including the Motions to Remand, are **continued without date**..." (Doc. 676) (emphasis added).

## III. Law

The Judicial Panel on Multidistrict Litigation is seeking to have this action transferred into MDL 2179 pursuant to 28 U.S.C. § 1407. *See* (Docs. 1912). As this Panel is well aware, you are "authorized to transfer civil actions pending in more than one district involving one or more common questions of fact to any district for coordinated or consolidated **pretrial proceedings**." MCL 4th § 20.13 (emphasis added). This transfer must be on a determination that the transfer "will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407 (a). Additionally, "[e]ach action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated." *Id.* Thus, the entire multidistrict concept is a statutory exception to venue rules.

The *Manual for Complex Litigation* explains, "[t]he objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." MCL 4th § 20.131

(internal citations omitted). Also, this Panel can designate the transferor judge to sit specially in the transferee district, and vice versa. *Id.* That being said, the transferee judge has no jurisdiction to conduct a trial in cases transferred solely for pre-trial proceedings. *See* MCL 4th § 20.132; *see also In re* Donald J. Trump Casino Sec. Litig., 7 F.3d 357, 367-68 (3rd Cir. 1993), *In re* Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). However, the transferee judge may not use venue statutes to transfer previously transferred cases to itself. *See* MCL 4th § 20.132, *Lexecon*, 523U.S. 26.

What the transferee court can do, and the MCL suggest it should do, is "conduct a bellwether trial of a centralized action or actions originally filed in the transferee district…" MCL 4th § 20.132. The results of such a trial would only be binding on the parties with their consent. *Id.* Additionally, the transferee judge can follow a remanded action to the originating district if assigned. *See generally* 28 U.S.C. § 292.

Next, "Section 1407 directs the Panel to remand, after appropriate pretrial proceedings…to the respective transferor courts for further proceedings and trial." MCL 4th § 20.133. This Panel relies on the transferee judge for remand, but may do so on its own motion, or that of a party. *See* J.P.M.L. 7.6(c); *see e.g., In re* IBM Peripheral EDP Devices Antitrust Litig., 407 F. Supp. 254, 256 (J.P.M.L. 1976), *In re* Roberts, 178 F.3d 181 (3d Cir. 1999). Remand is ripe when there are no common issues, and "[t]he transferee court should consider when remand will best serve the expeditious disposition of the litigation." MCL 4th § 20.133.

The Panel has refused to transfer cases for centralization when little would be accomplished by such a centralization, were the common issues were not complex, where only individual issues (such as damages) remain, and where there are alternatives which would facilitate efficient

management. *In re* Sprint Corp. PCS Network Contract Litigation, 303 F.Supp. 2d 1376 (2004). As shown *supra*, these actions are such instances and centralization is unwarranted.

**IV. Argument**

The pretrial proceedings in MDL 2179 are complete. Otherwise pleading Bundle 1 would not have been dismissed. There are no issues common to the Movant and the class members. Accordingly, remand is presently ripe and any attempt to transfer these actions to the MDL 2179 for consolidation is moot.

The Movant's claim before the Court Supervised Settlement Program (CSSP) was filed and denied for allegedly failing to meet certain documentation requirements. Therefore, only non-common or individual issues remain with respect to the Movants' individual actions. To the extent that common issues might remain, those issues are not complex within the meaning of *In re* Sprint, 303 F. Supp. 2d 1376, and therefore do not require centralization and coordination in MDL 2179. This is especially true in light of the dismissal of Pleading Bundle B1. Thus, there is no need for coordination with cases not in common to the MDL cases.

The entire "objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." MCL 4th § 20.131. *See also In re* Plumbing Fixture Cases, 298 F. Supp. 484 (J.P.M.L. 1968). As mentioned the pre-trial proceedings are complete. The objectives of transfer are not met after the pre-trial proceedings are complete. The benefits touted by the *Manual for Complex Litigation* with respect to transfer and consolidations are not received by the movants at this stage of the litigation, and therefore, transfer is not appropriate. A transfer of these actions into MDL 2179 would cause undue delay, would not promote a just and

efficient conduct of the action, will not convenience the parties and witnesses, and would visit unnecessary burdens on transferred actions.

Indeed, it is likely that this action will be caused to wait until the complete administration of the Amended Settlement Agreement's claims program until they are tried if the actions are transferred. Delay is inconsistent with the procedures and policies of the entire MDL concept. As mentioned, if this action is centralized in MDL 2179 it will become subject to Pretrial Order 15 (Doc. 676) which stays all motions until some indefinite future time. The Order specifically contemplates that all Motions to Remand are stayed, which means this action would have little hope of timely resolution in MDL 2179. *See generally* MCL 4th § 20.133. This result would not "save the time…of the parties, the attorneys, the witnesses, and the courts." MCL 4th § 20.131. *See also In re* Plumbing Fixture Cases, 298 F. Supp. 484 (J.P.M.L. 1968).

If this action is remanded to the transferor court, as it should be, the transferor court is adequate and capable to facilitate the efficient management of the action. The action made subject of the CTO is filed in the United States District Court for the Northern District of Alabama. There is nothing to suggest the judges and staff of the United States District Court for the Northern District of Alabama cannot handle one additional civil action.

## V. Conclusion

Multidistrict litigation exists to simplify the pretrial needs of complex litigation. Pleading Bundle B1 has been dismissed. All goals of centralization are therefore thwarted as pretrial proceedings have ceased. Therefore, the conditional transfer orders currently in place in this matter should be denied, and these actions should be remanded to their originating court for trial upon its individual merit.

February 1, 2017

*/s/ Frederick T. Kuykendall, III*

________________________________

Frederick T. Kuykendall, III

FERDERICK T. KUYKENDALL, III
KUYKENDALL & ASSOCIATES, LLC
PO BOX 2179
FAIRHOPE, AL 36533
ftk@kuykendallassociatesllc.com
(205) 434-2866

GRANT D. AMEY
LAW OFFICE OF GRANT D. AMEY, LLC
PO BOX 67
FAIRHOPE, AL 36533
grantamey@grantamey.com
(251) 716-0317

ATTORNEYS FOR ENVIRONMENTAL
LITIGATION GROUP, PC